McGowan, executor, etc., vs. Lufburrow et al.

1. A court of equity in this State has concurrent jurisdiction with the court of ordinary for the purpose of distributing estates; and where a petition was addressed to the court of equity by an executrix of an estate and others interested in remainder, setting forth that the estate of testator was largely indebted, and that it was necessary to sell a part thereof for the purpose of paying the debts, the court had jurisdiction to pass an order authorizing the executrix to sell land mentioned in the petition as proper to be sold for that purpose.

(a) This is true, although the schedule attached to the petition may have shown that part of the debts in question were debts of the life tenants instead of debts of the estate; it appearing that at least a portion of the indebtedness was due by the estate.

(b) When an application of this sort is made to the chancellor, the law presumes that he will make a proper investigation as to the truth of the allegations contained therein; and it does not appear from the record that such an investigation was not made in this case. If the chancellor did investigate, and ascertained that at least a portion of the indebtedness was due by the estate, and if he had the proper parties before him, his judgment directing the sale is not void and cannot be attacked collaterally.

2. A contingent remainder is an estate, under the code, §§2263-5; and minors interested as contingent remaindermen having been named as petitioners, and being represented by their next friend who joined in the petition for the sale of the property, thus became parties, and are bound by the decree.

(a) As soon as the application was presented to the chancellor, and it was disclosed that the estate of infants was involved, such infants

became his wards in chancery, and he obtained power and juris-diction over their persons and property.

3. It sufficiently appears from the evidence that the decree for the sale of the land was passed in term time and not at chambers.

4. Failure to file the petition thirty days before the term at which the decree was granted (the law at that time requiring bills to be so filed), was at most nothing more than an irregularity, and would not have made the decree entered thereon void; but the petition being an *ex parte* one, it was not necessary to file it any number of days before the court.

5. Under the views above expressed, it is unnecessary to determine other questions made.

April 8, 1889.

Administrators and executors. Equity. Jurisdiction. Parties. Practice. Chambers. Before Judge ADAMS. Chatham superior court. June term, 1888.

On May 13th, 1872, Mary G. Lufburrow, executrix of the will of Matthew Lufburrow, H. Milton Lufburrow and Orlando H. Lufburrow, sons of Mary G. and Matthew Lufburrow, the minor children of H. M. Lufburrow by their guardian *ad litem*, Matthew Lufburrow, son of Orlando H., and the minor children of Orlando H. by their guardian *ad litem*, filed, in the office of the clerk of the superior court of Chatham county, their petition addressed to the judge of the superior court, showing that, by the will of Matthew Lufburrow, said Mary G. was appointed executrix, and a considerable estate was devised; that the first item of the will directed the payment of debts, etc.; that the second item devised the whole of testator's estate to his wife, the said Mary, for life; that the third item directed that from and immediately after the death of said wife, testator's whole estate was to be divided into equal shares, and one of these shares was devised to testator's son H. M. for life, and from and immediately after his death to such child or children as he may have living at the time of his death, to them and their heirs

forever; if more than one, to be equally divided between them, share and share alike, child or children of any deceased child of the testator's son to take the part its deceased parent would have been entitled to; that the fourth item of the will made a similar devise of the other moiety to testator's son, Orlando H., and his children; that the fifth item provided for a disposition of the moiety devised to either of testator's sons, in case he should die without leaving issue; that the sixth item provided for disposition of the estate in case both sons should die without leaving issue; and that the seventh and last item appointed testator's wife executrix, and George W. Davis executor, of the will. The petition farther showed that said Mary G., H. M. and O. H., to whom the life estates were devised, had become largely and jointly indebted to various persons on account of said estate and otherwise; that said debts were due, and creditors were clamorous and about to institute proceedings by which said life estate would be made liable to pay said debts; that if the life estate were sold, the management and control of the property would pass into the hands of purchasers who would not be interested in preserving and keeping it in good order, etc.; that a large portion of the estate was in improved realty, requiring constant care, and petitioners were advised and believed it would be for their interest and that of the estate that a part of the estate, to wit, lot No. 5, Hicks tything Percival ward in Savannah, be sold and the proceeds applied to the payment of said debts, any balance which might remain in the hands of said executrix to to be reinvested by her upon the terms of the will, purchasers not being required to look to the application of said proceeds. The petition farther showed that all those interested were represented and consenting, and that no questions of fact were in dispute, and prayed

for an order empowering the executrix to sell the lot men-
tioned, either at public or private sale, applying proceeds
as above stated.   Attached to the petition, as exhibits,
were a copy of the will and a schedule of the indebted-
ness referred to in the petition.   This indebtedness ap-
peared to be in divers notes, drawn or endorsed by the
said Mary G. and O. H. or H. M., and in some open ac-
counts.   The character of the indebtedness is not other-
wise stated, except as to one item, which was " bill A.
M. Barbee, repairs to estate property, $1,986.69."   The
entire amount of the indebtedness, as stated, was
$18,081.69.

Upon the day the petition was filed, it was granted
by an order of the judge of the superior court of said
county.   This order was headed: " *Ex parte* Mary G.
Lufburrow, executrix, *et al.*   In Chatham superior court,
in chambers."

On May 18th, 1886, Stephen B. and Wm. W. Luf-
burrow, sons of said H. M. Lufburrow and Caroline
W. Lufburrow, his widow, brought their action of
ejectment for a half-interest in said lot No. 5, Hicks
tything, against J. J. McGowan, executor of Maria
Moylan, and trustee, under her will, for her children.
To this action, the defendant pleaded (besides the plea
of not guilty), among other things, the *bona fide* pur-
chase for value of the property by Maria Moylan under
order and decree above mentioned.   The court struck
this plea, holding that the order for the sale of the
property was an order, by the judge at chambers, for
the sale of a purely legal estate, and was unauthorized
by law.

Profert of the record of the petition and order showed
that, on the day the order was granted, the proceedings
in question were entered on the minutes as of that day;
and also showed an order for the appointment of a

guardian *ad litem* for the minor petitioners, but said order was unsigned. The defendant excepted *pendente lite* to the striking of said plea.

It was agreed by counsel that Mary G. Lufburrow, the widow of Matthew Lufburrow, died May 12th, 1886; that H. M. Lufburrow, the father of Wm. W. and Stephen B. Lufburrow, and husband of Caroline W. Lufburrow, the plaintiffs, died December 30th, 1874, leaving said widow and sons, and a third son, John F., who died intestate in August, 1876, leaving his mother and two brothers as his only heirs at law; and that the title of the premises sued for was, at the time of his death, in Matthew Lufburrow, and passed, at his death, to the persons entitled thereto under his will. The minutes of Chatham superior court for May 13th, 1872, showed that said court was, upon that day, in regular session transacting business, and that the order or decree granting the leave to sell under the petition was duly entered upon such minutes. The deed to Maria Moylan, conveying the property in question, bore the same date, and recited the above mentioned decree for sale and also a consideration of $16,025 paid to the executrix. It was signed by Mary G. Lufburrow, as executrix and in her own behalf, by said H. M., O. H. and Matthew Lufburrow.

Among the other testimony, there was some introduced for defendant tending to show that the petition and decree had been prepared and the decree ready for signature a week or more before it was actually signed.

After the introduction of evidence by both sides, special issues of fact were submitted to the jury, and they found, among other things, that plaintiffs were entitled to recover an undivided half-interest, and that $2,000 of the purchase money, paid by Mrs. Moylan, was used in discharging debts for which the estate of

Matthew Lufburrow was liable, and by which it was benefited.   The defendant moved for a new trial on the following among other grounds:

(1) Error in refusing to reinstate the special plea which had been stricken by the court.

(2) Error in refusing to charge as follows: The decree of the court, dated May 13th, 1872, authorizing Mary G. Lufburrow, executrix, to make sale of lot number five, Hicks tything, was a good and valid decree, and if Maria Moylan purchased said property under said decree, she obtained a good and valid title thereto; and your verdict must be for defendant.

(3) Error in refusing to charge:   If the decree under which Maria Moylan purchased the property in dispute was granted in open court while the court was in regular session, and not by the judge in chambers and while the court was not in regular session, it was a good and valid decree, and the purchaser of the property sold thereunder acquired a good and indefeasible title.

(4) Error in failing and refusing to refer to the jury, as a question of fact, whether or not said decree was granted in open court during its regular session, or by the judge out of court in chambers.

(5) Error in refusing to charge:   If the plaintiffs or their privies were parties to the petition filed May 13th, 1872, and in the petition state that the estate of Matthew Lufburrow was indebted to certain parties therein named, or that the life tenants had become indebted on account of said estate, then the plaintiffs are bound by such admissions and allegations made in judicio, and are now estopped to deny the truth of the same.

(6) Error in charging that the proceedings under which this property was sold and was purchased by Mrs. Moylan, were void, and therefore she did not get a good title.

(7) Error in instructing the jury that plaintiffs were entitled to recover an undivided half-interest in the premises in dispute.

This motion was overruled.    The defendant excepted and brought the case to the Supreme Court, where it was dismissed as prematurely brought, the judge having made no written judgment and decree on the verdict; but leave was granted to enter the exceptions as exceptions *pendente lite*.   (See *McGowan vs. Lufburrow,* 81 *Ga.* 358.)   The exceptions were so entered and afterward a decree was entered upon the verdict in favor of the plaintiffs and against defendant, which decree, after reciting the verdict, among other things provided that, subject to a lien in favor of defendant for the amount of $2,000 on the premises recovered, the plaintiffs do recover the undivided half-interest in said lot of land, etc.    Defendant assigned error on his bill of exceptions *pendente lite* to the action of the court in striking his special plea, and also alleged that the court erred in refusing to grant a new trial and in rendering the decree.

GEO. A MERCER and CHISHOLM & ERWIN, for plaintiff in error.

R. R. RICHARDS, LESTER & RAVENEL, J. E. WOOTEN and U. H. McLAWS, *contra.*

SIMMONS, Justice.

1. The real and important question in this case is, whether the court had jurisdiction to pass the order of May 13th, 1872, authorizing the executrix to sell the land in controversy.   We think that it had.   The executrix of this estate, together with her sons in their own right, and her sons' children by next friend, filed

their petition to the chancellor, wherein they alleged that certain debts were owed on account of the estate. It is true that in the schedule of such debts, annexed to the petition, they showed that the larger portion thereof consisted of drafts drawn, sometimes by the son upon the executrix and accepted by her, sometimes by the other son and accepted by his brother, and sometimes by the executrix and accepted by the son; but besides these drafts were certain accounts for improvements upon the estate. At any rate, the petition alleged that the estate owed debts, and that it was necessary to sell a part of the estate for the purpose of paying them.

If this petition had been addressed to the ordinary of the county, no one would doubt that he would have had jurisdiction to hear and determine the facts alleged therein; and if proper proof had been made before him, he could have passed an order authorizing the executrix to sell a sufficient portion of the property to discharge the debts due by the estate. If, therefore, the ordinary would have had jurisdiction to hear and determine the facts set out in the petition, the chancellor in this case also had jurisdiction; for it is well-settled by the adjudications in this State, that a court of equity has concurrent jurisdiction for the purpose of distributing estates. *Dean vs. Central Cotton-Press Co.*, 64 *Ga.* 670.

The jurisdiction of all courts depends upon the allegations in the pleadings. Counsel for the defendants in error contended that these pleadings, upon their face, show the want of jurisdiction, because the allegations show that the debts were debts of the life tenants instead of debts of the estate. That may be true as to the larger portion of the indebtedness, but it does not follow that because the life tenants were bound on the notes and drafts, they were not originally the debts of the estate. In the case of *Dean vs. Cotton-Press Co.*,

*supra*, it appeared that the executor had borrowed money to pay off the mortgage. Besides, as we have seen, a portion of this indebtedness seemed to be for repairs made by a contractor upon the property of the estate; and on the trial of this case, the jury found that a part of the debt was against the estate. If any part of the indebtedness alleged in the petition was due by the estate, the ordinary would have had jurisdiction to pass an order for the sale of a portion of the property to pay off that indebtedness, and a court of equity, having concurrent jurisdiction, as above shown, would have the like power.

The law presumes that when an application of this sort is made to the chancellor, he will make a proper investigation as to the truth of the allegations contained therein. It does not appear from the record that such an investigation was not made by the chancellor in this case; and it may be that he heard testimony on the subject, and ascertained, as the jury subsequently did, that at least a portion of this indebtedness was due by the estate. If he did, and had the proper parties before him, the judgment is not void and cannot be attacked collaterally. Code, §3593.

2. Did he have the proper parties before him? It is not disputed that the executrix and the two sons were properly before him, because all three united in the application. The contention is, however, that these plaintiff's (the defendants in error here) were minors at that time and were not bound by the decree, because the court had no jurisdiction over them. We do not agree with this view of the case. The record shows that these minors were represented by their next friend, who joined in the petition for the sale of this property. The object of the decree was to pass to the purchaser their remainder interest in the property sought to be

sold. It is true that the remainder at that time was a contingent one as to them, and it is further true that some courts and text writers declare a contingent remainder not an estate, but only a chance to have one; but whatever differences may have heretofore existed between courts and text writers upon this subject, our code has settled it by declaring that a contingent remainder is an estate. Code, §§2263–2265. These minors, therefore, had an interest or an estate which was to be passed upon by the chancellor. They were properly represented before him by their next friend. The code, §4221–2, declares, that "all proceedings *ex parte*, or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery, may be presented to the court by petition only, and such other proceedings be had therein as the necessity of each cause shall demand. A court of equity is always open, and hence the judge in vacation and at chambers may receive and act upon such petitions, always transmitting the entire proceedings to the clerk to be entered on the minutes or other records of the court." This court, in construing these sections, in the case of *Sharp vs. Findley*, 71 *Ga.* 665, says : "The very minute this petition came before this chancellor and disclosed the fact that the land of infants was involved, his wards were before him, and the case was concerning 'an estate of the wards of chancery'." See also 3 Pomeroy Eq. Juris. §1305 and notes. Here, as we have shown, was an application before the chancellor concerning the estate of infants. According to this decision, just as soon as the application was presented to him, they became his wards, or the wards of chancery. He thereby obtained power and jurisdiction over their persons and their property. Having shown that at least a part of the indebtedness represented in this peti-

McGowan, executor, etc., *vs.* Lufburrow *et al.*

tion was a debt against the estate, and that the ordinary of the county would have had jurisdiction to pass an order for the sale of a sufficient portion to pay the debts, and that a court of equity has concurrent jurisdiction, the payment of the debts of an estate being a part of the distribution thereof; and having shown that these children were properly before the chancellor, and that their estate was involved- in the application made by them, we think it follows as a logical sequence that the court had jurisdiction both of the subject-matter and the person. Having jurisdiction of the subject-matter and the person, it had the power and authority to grant the decree set out in this record, for the sale of the land.

3. But it is contended that while this may be true, the decree was passed at chambers, and not in term time, and that the chancellor had no power to pass such a decree in chambers. We have looked into the evidence in the record upon this subject, and we are inclined to think that the decree was passed by the chancellor in term time and not in chambers. The evidence of the clerk of Messrs. Hartridge & Chisholm, who prepared this application, is that it had been prepared some time before the meeting of the superior court in May, 1872, and that on the first day of the term this petition was presented to the chancellor in open court. The decree passed in the case was put upon the minutes of the court of that day, and we presume these minutes were signed by the judge either at the termination of the proceedings of that day or at the termination of that term of the court. It is true that on the back it is marked, " In chambers "; but these words were left out by the clerk when he recorded the decree on the minutes of the court. From these facts we conclude that the order was passed in term time.

4. But it is said that, admitting this to be true, still the petition was not filed thirty days before the court convened. Although the law at that time required bills to be filed thirty days before the term, we think, nevertheless, that the failure to file this petition thirty days before the term at which the decree was granted, could at most have been nothing more than an irregularity. The petition was not filed against any defendant, but all of the parties in interest joined therein. No defendant was called on to show cause why the prayer thereof should not be granted. We think, therefore, that the omission to file the petition thirty days before the term, even had it been irregular, would not have made the decree entered thereon void. But in our opinion, it was not necessary to file an *ex parte* petition any number of days before the court. Section 4221 of the code, *supra,* does not prescribe any time wherein a petition of this character should be filed. It seems that if it is filed on the very day it is acted on by the chancellor, the filing is in sufficient time.

5. Taking this view of the facts and law of this case, it is unnecessary for us to discuss the other questions, which were so ably and elaborately argued before us by counsel on both sides of the case; nor to comment on the cases cited by them, as to what a chancellor can or cannot do in chambers. Having decided in favor of the jurisdiction, all controversy is closed. A judgment is a solemn thing—the utmost solemnity of the law. Every doubt should be given in its favor, especially when the rights of a *bona fide* purchaser are involved. Such purchasers are favorites of courts.

Judgment reversed.