## MOREHEAD *v.* ALLEN *et al.*

1. A judge of the superior court at chambers has no authority, upon an original petition then presented, to order a sale of the legal estate of minors to real estate, although it may be represented as beneficial to them, there being no trust involved, and nothing having been done to make them wards in chancery, except the application for leave to sell.

(a) Although an order may have been granted by a judge of the superior court between the date of the opening of the session and the date of its close, yet if in fact the proceeding was not a court matter, but was one at chambers, and was so treated and acted upon, and stated in the order to have been done at chambers, the validity of such proceeding and order would be tested by the power of the judge to take such action at chambers, and not by the general powers of the superior court in session exercising equitable jurisdiction.

(b) This case does not involve the power to authorize a sale by a guardian of the property of minors for reinvestment under the act of 1889 (Civil Code, §2545).

2. It was not erroneous for the judge to charge in effect that if the deed under which the defendants claimed was valid and conveyed to them a legal estate in remainder, the proceedings had before the judge in 1873 and the conveyance made by the life-tenant under the order then granted were ineffectual to divest the defendants of their title.

3. Where, in a litigation concerning title to land which had been conveyed in conformity with an order of the character indicated in the first headnote, the party relying upon such conveyance placed in evidence the proceedings and order, and then sought to show by parol evidence that in fact the proceedings were had in open court and the

order was so granted, instead of being granted at chambers as it recited, and that the action taken was that of a court of equity in session, and not of a judge at chambers, as the record showed on its face, such evidence was properly rejected.

(*a*) The mere fact that proceedings of the character above indicated were entered upon the minutes, along with entries of business which transpired in court on the day of the date of the order, did not raise such an ambiguity as to authorize the admission of parol evidence for the purpose stated in the preceding headnote.

(*b*) In *McGowan* v. *Lufburrow*, 82 *Ga.* 523 (9 S. E. 427, 14 Am. St. R. 178), no objection was made to the admissibility of the evidence there considered.

4. The evidence was sufficient to authorize the jury to find that the deed under which the defendants claimed had been delivered.

5. In view of the contention by the plaintiff that the deed under which the defendants claimed had been executed without consideration, and in view of all the testimony in the case and the recitals in the deed executed in 1873 that a part of the consideration was money previously received by the grantor from his wife, testimony of the wife in these words: "In 1868 I received nine or ten thousand dollars from an estate in South Carolina, and my husband was entrusted by me with this money with instructions from me to invest in land for the benefit of myself and children," was not inadmissible in evidence on the ground of irrelevancy.

6. It was contended that the deed under which the defendants claimed was void because executed for the purpose of hindering, delaying, or defrauding creditors, and that it was inferior to a certain United States marshal's deed under which the plaintiff claimed. The evidence when considered in its entirety was sufficient to support the verdict finding against such contentions.

Argued May 23, 1908.—Decided January 21, 1909.

Equitable petition. Before Judge Felton. Houston superior court. December 30, 1907.

Mrs. L. L. Morehead filed her equitable petition against Alexander S. Allen and John H. Allen, praying to have a deed which had been made by their father in 1871, conveying land to their mother for life, with remainder to the children of herself and their father, born or to be born, declared void in so far as it purported to convey title to the children; for injunction against them to restrain them from disturbing the title or possession of the plaintiff; and for general relief to protect her title. The land involved in controversy was conveyed by William D. Allen, the father of the defendants, on March 26, 1871, to his wife, Susan W. Allen, for life, with remainder to her children by him, born or to be born. The deed covered 1200 acres. The defendants are

the only children claiming an interest, one other child having died without leaving husband or issue. The deed recited as its consideration, that, "Whereas the said William D. Allen is indebted to his said wife, the said Susan W. Allen, in the sum of $9,800, besides interest thereon since 1862, said amount of money the said William D. Allen acknowledges receipt by and through his said wife, the said Susan W. Allen: Now, in consideration of the full and complete release of the said William D. Allen and his estate by the said Susan W. Allen of said sum of money, which release is acknowledged by the acceptance of this deed of conveyance, as well as the consideration of the natural love and affection which the said W. D. Allen has and bears to and for his said wife and her children by said W. D. Allen; also in consideration of the sum of $5 cash in hand paid, the receipt whereof is hereby acknowledged," etc. At that time Allen was indebted to various persons. In 1873 an execution from the United States court, based on a judgment recovered against Allen by one Cooper, was levied on the land and a sale was made by the marshal, J. W. Lathrop & Company becoming the purchasers. In December of the same year a petition was filed in the name of Mrs. Allen "in her own right and as next friend of her minor children." It was headed, "Georgia, Houston county," and was addressed to the "Honorable Barnard Hill, Judge of the several Superior Courts comprising the Macon Circuit, entertaining jurisdiction in Chancery." It recited, the making of the deed by Allen to his wife and children, the sale by the marshal under the execution in favor of Cooper, and the purchase by Lathrop & Company; that this sale and the deed made under it left the matter in doubt as to who might finally hold the lands in case of suit being brought for recovery of them by Lathrop & Company; that the deed from Allen might be declared void, and if so the entire interest of petitioner and her children would be lost; that Lathrop & Company had proposed to adjust the conflicting claims by conveying to her and her children 500 acres of land, without warranty, taking a quitclaim deed to 700 acres of the land; and that it would be greatly to the interest of herself and children for her to be allowed to sell the land and make the settlement. It was alleged that the children were minors, and had no guardian; and it was prayed that their father be appointed guardian ad litem for them, and

that he then show cause, if any existed, why the sale should not
be made, and the settlement carried out as proposed.  This was
signed by a member of the bar, signing as "attorney for Susan
W. Allen."  Upon this petition an order was passed, which was
headed, "At Chambers, Perry, Ga., December 12, 1873," which
appointed Allen guardian ad litem for his children, and directed
that he be served, and that he show cause "within ten days," if
any existed, why the sale of lands mentioned in the petition should
not be made, and that he answer the petition.  No service was
made upon the children themselves, but Allen acknowledged serv-
ice, signing, however, in his own name.  He made an answer,
headed, "Ex Parte Susan W. Allen: Application for leave to sell
land."  He concurred in the statements of the petition, and
recommended that the proposed sale and settlement be allowed.
Upon this an order was passed, which was headed, "At Chambers,
Perry, Ga., December 13, 1873," and was signed, "B. Hill, Judge
Superior Court, Macon Circuit."  It ordered and decreed that
upon the delivery by Lathrop & Company to Mrs. Allen of a good
and sufficient deed, conveying 500 acres to her for life, with re-
mainder to her children, born or to be born by Allen, without
warranty except as to themselves and those claiming through
them, "said Susan W. Allen be and she is hereby authorized and
fully empowered to convey by deed, without warranty, to said J.
W. Lathrop & Company all the right, title, claim, or interest that
said Susan W. Allen has as life-tenant, and the said Alexander S.
Allen, Maggie L. Allen, and John H. Allen and any future chil-
dren that may be born to said Susan W. Allen by her present
husband, may have as remaindermen in" the 700 acres.  It was
further ordered that the proceedings be entered on the minutes
of Houston superior court.  There was no entry of filing upon
any of the papers, but they were entered on the minutes in ac-
cordance with the order.  A deed was made by Lathrop & Com-
pany, conveying the 500 acres to Mrs. Allen for life, with re-
mainder to the children; and one by Mrs. Allen to Lathrop &
Company, covering the 700 acres as specified in the judge's order.
Mrs. Morehead succeeded to whatever title Lathrop & Company
had.  The defendants denied the substantial allegations of the
plaintiff.  It was not sought by the children to recover the land
during the lifetime of Mrs. Allen, nor did the plaintiff seek to

cancel the deed as to her; but the real question was as to determining the ultimate status of the title as between Lathrop & Company and the children, it being contended that claims by the children of a remainder interest in the land held by Mrs. Morehead interfered with her disposition of it, and operated as a cloud upon her title. It was agreed upon the trial that any question as to nonjoinder or misjoinder of parties should be waived, and that the case should proceed as though all proper parties were before the court; also that Allen and his wife were married in 1862, and that Judge Barnard Hill lived in Macon in 1873.

On the trial a verdict and decree were rendered in favor of the defendants. The plaintiff moved for a new trial, which was refused, and she excepted.

*Tomlinson Fort, H. L. Grice, W. L. & Warren Grice,* and *Duncan & Duncan,* for plaintiff.

*A. L. Miller, Joseph H. Hall,* and *Warren Roberts,* for defendants.

ATKINSON, J. Mrs. Morehead, as successor in title under Lathrop & Company, claimed, as against the children of W. D. Allen and his wife, to have a perfect title by virtue of the deed made by Mrs. Allen under authority of the order of the judge of the superior court, purporting to convey both her life interest and the remainder interest of her children to Lathrop & Company, covering the 700 acres of land. She further contended, that if this deed did not convey perfect title to the remainder interest of the children, Lathrop & Company held a deed made by the United States marshal under a public sale based upon an execution against Allen; that the original deed made by Allen to his wife, with remainder to their children, born and to be born, was made for the purpose of hindering, delaying, and defrauding his creditors, including one Cooper, whose administrator afterwards recovered a judgment against Allen under which the marshal's sale took place; and that the deed made by Allen was without consideration, and was never delivered, and therefore that the plaintiff had a title under the marshal's deed, superior to any claim of the children under the deed of their father.

1. In regard to the proceedings had before the judge of the superior court, resulting in an order by him and conveyances made

under its authority, two important questions were made: (1) Was this proceeding a chambers proceeding before the judge, or was it a regular proceeding before the superior court and to be treated as an equity case or proceeding in court resulting in a final decree by the court? (2) If it was to be treated as the proceeding of a court of equity, resulting in a judgment or decree of that court, rather than a chambers proceeding with an order of the judge of the superior court out of court, did the superior court have jurisdiction to decree a sale of the legal estate of a minor, where no trust was involved, or the administering of any estate, or the dealing with property covered by a will containing provisions impossible of execution, or other similar reasons? As, under the view we take of the matter, the first point is controlling, it will be unnecessary to discuss the power of a court of equity as distinguished from that of a judge at chambers, to order a sale of the legal estate of minors, unless there is some equitable reason beyond the mere desire to sell the property, or whether other facts involving possible loss of the whole estate of minors would authorize a court of equity, upon regular proceedings, to allow a compromise to be made and part of the estate to be conveyed under direction of the court and by some person empowered by it so to do, in order to save the balance. On this subject there is not entire harmony in the authorities. Two different views will be found discussed in the opinion of the majority of the court and the dissenting opinion in *Richards* v. *East Tenn. Ry. Co.,* 106 *Ga.* 614 (33 S. E. 193, 45 L. R. A. 712). It is also unnecessary to discuss the subject of wards in chancery, and whether there must be a legitimate proceeding in equity involving the estate of a minor before he can be made a ward in chancery as an incident of the suit, or whether the mere bringing of a case against a minor in regard to his legal estate, regardless of any other ground of equity, will thereby make him a ward in chancery and then by a reflex action confer jurisdiction by reason alone of his being such ward. These are subjects involving no little difference of opinion and diversity of view, and they may be passed without more than casual mention here.

Turning to the first point above stated, in regard to the proceedings before the judge of the superior court and the deed made under it, let us see if those proceedings are to be considered as

regularly before the superior court and dealt with by that court as such, or whether they are to be treated as proceedings at chambers before the judge, not the court, and acted on by him as such. The general aspect of the proceedings is rather that of a matter at chambers before the judge than of one before the court. In the first place, the application made by Mrs. Allen stated that it was in her own right and as next friend of her minor children. No defendants were named and no process prayed. There was a prayer that their father be appointed their guardian ad litem, and that he show cause, if any existed, why the sale and settlement should not be made as proposed. On this an order was entered which declared on its face that it was granted at chambers on December 13, 1873. It required Allen, as guardian ad litem for his children, to show cause within ten days from its date why the sale should not be made, regardless of whether Houston superior court remained in session for that length of time, thus being returnable on its face without regard to whether the court would be in session. Again, the proceedings do not bear any evidence of having been filed as court papers. It may be said that these things may be treated as irregularities rather than as making a proceeding in equity void; but they may be mentioned as throwing light upon the real character of the proceeding, and as corroborating. the next ground, which we shall state, for holding them to be chambers proceedings. The order which was finally granted by the judge stated on its face that it was "at chambers, Perry, Ga., December 13, 1873." The term "chambers" is defined by Burrill in his Law Dictionary as "the office or private rooms of a judge, where parties are heard, and orders made in matters not requiring to be brought before the full court; and where costs are taxed, judgments signed, and similar business transacted." Bouvier's Law Dictionary says: "Any hearing before a judge which does not take place during a term of court or while the judge is sitting in court, or an order issued under such circumstances, is said to be *in chambers*. The act may be an official one, and the hearing may be in the court-room; but if the court is not in session, it is still said to be done *in chambers*." In Pittsburg Ry. Co. *v.* Hurd, 17 O. St. 144, it is said: "Jurisdiction at chambers is incidental to and grows out of the jurisdiction of the court itself. It is the power to hear and determine, out of court

such questions arising between the parties to a controversy, as might well be determined by the court itself, but which the legislature has seen fit to entrust to the judgment of a single judge, out of court, without requiring them to be brought before the court in actual session." In Frawley *v.* Cosgrove, 83 Wis. 441, 445 (53 N. W. 689), Cassoday, J., said, in the opinion: "This court has frequently held that 'a judge at chambers' is simply a judge of a court of record acting out of court." Expressions such as "in the judge's chambers," "at his chambers," and the like, have sometimes been construed in the light of general provisions of statutes or constitutions in which they occurred, and the legislative or constitutional intent has been the main point to be arrived at, rather than the exact meaning of the expression "at chambers" taken alone as characteristic of a certain kind of procedure. Generally the question as to whether a proceeding was at chambers or was a part of the exercise of the jurisdiction of the court as such has arisen in this State in cases where the action complained of took place in vacation. But we can not declare, as matter of law, that everything which a judge does between the opening of his session of court and its close is essentially a court procedure rather than one at chambers. In some counties the terms of court last for several months at a time. While the term is still continuing the judge may pass orders in the exercise of his powers at chambers. The distinction between the two kinds of acts on the part of the judge is not limited to the mere question of whether they are done between the general commencement of a term of court and its close, or in vacation. To illustrate, during the pendency of a term of court, a judge may have an application made to him for the appointment of a temporary receiver or the granting of a temporary restraining order. These things he may act upon, but they are not inherently a part of the procedure of the court in term time. Under his powers as chancellor he might grant such orders in vacation as well as in term time. He need not have granted them in open court, or even in connection with the proceedings of the then pending term of court. It not infrequently happens that while a judge is holding a term of court in one county of his circuit, applications for temporary injunctions, restraining orders, the appointment of receivers, and the like, in other counties are presented to him and acted upon by him. But such action does

not become a part of the proceedings of the court then pending. They are at chambers although granted while the court in one county is actually going on. In Chicago Ry. Co. v. St. Clair, 144 Ind. 371 (42 N. E. 225), it was held that "A judge of the circuit court, who is holding a session in one of the counties in his circuit, may make an order appointing a receiver in an action brought in another county, under section 1236, R. S. 1894, providing that receivers may be appointed by the court or the judge thereof 'in vacation.'" The expression "at chambers," as characterizing the action of the judge as such, and not as a court, is recognized in our code. Thus section 4320 of the Civil Code deals with the jurisdiction and authority of the superior courts. Section 4321 deals with the authority of the judges of the superior courts.

In subsection 4 of the latter section it is declared that the judges have power to hear and determine "questions arising upon writs of habeas corpus or bail, when properly brought before them; all motions to grant, revive, or dissolve injunctions, to give new security or lessen the amount of bail; and to perform any and all other acts required of them at chambers."

In the case before us the judge declared on the face of his order that he was acting at chambers, and consequently not as a court in session; and we have endeavored to show that the whole proceeding bore other indicia that this was the case. It is urged that the proceedings were recorded on the minutes of Houston superior court of the day when the judge's order bore date; but if it were a matter in which the judge had the authority to act at chambers or even in vacation, he would nevertheless have directed due entry to be made upon the minutes of the court of the proper county. The fact that the entire proceedings were ordered to be entered on the minutes and were so entered would tend to indicate that they were considered as matters dealt with at chambers and specially to be placed upon the minutes by order, instead of a regular case in equity before the court, in which the orders and judgments and decrees are recorded without any special direction from the judge, and the pleadings are not commonly entered on the minutes.

If the action taken was that of the judge at chambers and not that of the superior court, then, as several times held by this court, the judge had no authority to order a sale of the legal title

of minors to real estate, whether it appeared· to be beneficial or not. There was no trust and no executorship here involved, nor a will impossible of execution, as in some of the cases. *Pughsley* v. *Pughsley,* 75 *Ga.* 95; *Rogers* v. *Pace,* 75 *Ga.* 436; *Fleming* v. *Hughes,* 99 *Ga.* 450 (27 S. E. 791); *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934); *Webb* v. *Hicks,* 117 *Ga.* 335 (43 S. E. 738); *Mitchell* v. *Turner,* 117 *Ga.* 958 (44 S. E. 17).

The order under consideration was granted in 1873, and the act of 1889 (Civil Code, §2545) is in no way involved.

2. Error was assigned ón the charge of the court, to the effect that if the deed from Allen to his wife, with remainder to the children, was valid, and conveyed to the defendants a legal estate in remainder, the proceedings had before the judge in 1873 and the conveyance made by Mrs. Allen under the order then granted were ineffectual to divest them of their title. From what has been said above it is apparent this charge was correct.

3. Parol evidence was offered for the purpose of showing that the proceedings in fact transpired in open court, and not at chambers. It was likewise contended that as they were entered on the minutes, along with court business of the date of the order, this created an ambiguity explainable by parol. As already stated, whether the matter was acted on as one at chambers or as pertaining to the business of the term or in open court, the judge's order at least would be recorded on the minutes. The fact of the record by the clerk when he received the papers raises no ambiguity as to the character of the proceeding before the judge as stated by him in granting the order. The question is whether the proceedings were before the judge as matter pertaining to his jurisdiction in chambers, or before the court. He had completed them before the record by the clerk, and the clerk's action in recording the proceedings along with other matters could not raise an ambiguity in the statement by the judge made in granting his order. The statement at the head of the order was a plain, clear, and unambiguous assertion that the proceedings were had at chambers, and were so acted on as a chambers matter, and not in open court as a proceeding pertaining to the business of the term. Such a statement in an order can not be disproved in a collateral proceeding by parol testimony, where proper objection is made to its admission. If the judge's statement that a certain proceeding was

dealt with as a chambers matter, and not in open court or as a matter of administering the business of the court, could be disproved by parol, would it not be equally competent, if he had said that it was done in open court, to prove that this was not true, but that it was a chambers transaction? To allow such disproof of the orders of the court in a collateral proceeding would open the door to upset much that appears on the minutes of the court. If the minutes are incorrect or the judgment itself is incorrect, in recitals of this character, it should be corrected by direct proceedings, not by collateral attack. *Williams* v. *Simmons*, 79 *Ga.* 649 (7 S. E. 133), followed in *Walker* v. *Equitable Mortgage Co.,* 114 *Ga.* 869 (40 S. E. 1010); and *Hollenbeck* v. *Glover*, 128 *Ga.* 52 (57 S. E. 108).

In the case of *McGowan* v. *Lufburrow*, 82 *Ga.* 523 (9 S. E. 427, 14 Am. St. R. 178), parol evidence was admitted without objection, and the Supreme Court dealt with the evidence before it, not with the question of its admissibility. Furthermore, the Justice who prepared the opinion said that "It is true that on the back it is marked 'in chambers;' but these words were left out by the clerk when he recorded the decree on the minutes of the court." As a matter of fact the original record of file in the office of the clerk of this court shows that the words "in chambers" occurred in the heading of the order, and not merely on the back of the paper, and that they were not recorded on the minutes by the clerk; but the quotation from the opinion above made shows that it was inadvertently treated as if those words were only a part of the entries on the back of the record, which were not included by the clerk in recording the order.

It was contended that under the decision in this case when formerly before this court (127 *Ga.* 510 (56 S. E. 745)), the evidence should have been admitted; but we do not think that the decision then rendered is subject to such construction. We then called attention to several of the circumstances mentioned in this opinion as tending to show that the judge treated the matter before him as a chambers proceeding, distinguished the case from that of *McGowan* v. *Lufburrow*, supra, stated that no presumption would arise in favor of the order which would overcome the statement of the judge that it was granted at chambers, and remanded the case to the superior court for a new trial, which was rendered

necessary for another reason. No question of the admissibility of evidence was then before us, and accordingly none was decided.

4. The plaintiff attacked the title of the defendants to a remainder interest in the land, on the ground that the deed made by their father in 1871, under which they claimed, had not been delivered. There was evidence, that it was drawn by an attorney for the purpose of conveying the land by Allen to his wife for life, with remainder over to the children born or to be born; that he executed it and caused it to be recorded in the office of the clerk of the superior court; that it remained there for some time, when it was received by the attorney who had drawn it and handed to Allen; that Mrs. Allen and the children subsequently claimed under it; that in the proceedings by which it was sought to divest the title of the remaindermen, it was treated by Allen and his wife as if it had been completely executed, including delivery; and finally that Lathrop & Company received a deed purporting to convey the interest of the minors, which would not have attached if there had been any delivery of the deed creating such interest. There was ample evidence to authorize the jury to find that the deed had been delivered. The charge on the subject of the authority of the jury to infer delivery from facts of the character mentioned was not subject to the criticism made thereon in the motion for a new trial.

5. Mrs. Allen, the mother of defendants, was examined by interrogatories. Among other questions, she was asked the following: "If you should answer that he, W. D. Allen, was indebted to you on the 26th day of March, 1871, state how such indebtedness arose, and how he became so indebted, and the amount of said indebtedness?" To this she answered: "In 1868 I received nine or ten thousand dollars from an estate in South Carolina, and my husband was entrusted by me with this money with instructions from me to invest in land for the benefit of myself and children." Objection was made to this answer as irrelevant, because it did not appear that the nine or ten thousand dollars was a part of the consideration of the deed. The consideration of a deed may always be inquired into when the ends of justice require it. Civil Code, §3599. The deed made by Allen in 1871 recited that whereas he was indebted to his wife in the sum of $9,800, besides the interest thereon since 1862, receipt of which he acknowledged, etc. Mrs.

Allen testified that she was married to her husband in 1862, that he did not owe her at that time, but that he was indebted to her on the 26th day of March, 1871, when the deed was made. Then followed the evidence to which objection was made. As the deed recited as a part of its consideration the receipt of money from the grantor's wife, it was competent to show that such sum was delivered by her to him, not in 1862, but in 1868. It was urged that when the Allens were married in 1862, as what is generally known as the married woman's law of 1866 had not been passed, the marital rights of the husband attached to the property of the wife, so that the delivery by her to him in 1868 furnished no valuable consideration for the deed subsequently made. It appears, however, from the evidence that the money which Mrs. Allen received was derived from an estate in South Carolina, which was apparently not wound up, but remained undivided until sometime near the date when she delivered the money to her husband. What was the nature of the property belonging to the estate in which she had an interest, and from which the fund was derived, does not distinctly appear, nor was it shown whether it consisted of land, personalty, or choses in action. If Allen had any marital rights in regard to this interest, they were never asserted. He did not reduce the property or the wife's interest to possession as his own, or assert any dominion over it. From her evidence it would seem that after the passage of the married woman's act she received, or at least had in possession, certain money which she claimed as her own; and which Allen recognized as hers, and not his. When she delivered it to him she did not do so as his money, or by virtue of any assertion of any marital right on his part, but she entrusted it to him for the purpose of investing for the benefit of herself and children. While there may have been conflicting evidence, it was proper to admit that to which objection was made; and there was enough to authorize the jury to find that the deed of Allen was not wanting in valuable consideration.

6. The deed from Allen to his wife and children was also attacked, in so far as it covered the land claimed by the plaintiff, and in so far as it purported to convey title to the children, on the ground that it was made for the purpose of hindering, delaying, or defrauding creditors, among whom were Cooper and Lathrop & Company, and that the deed which that firm received from

the United States marshal was superior to any rights on the part of the children. It is a little unusual to seek to have a deed declared void only as to a remainder interest, and leave it to stand as to the life-estate. If the deed of Allen was void at all, no reason would suggest itself why it was not void as to the entire estate, and as to the whole land. The plaintiff introduced a considerable amount of evidence for the purpose of sustaining this contention; but in view of the entire evidence in the record, we can not say that the verdict against this contention was unsupported.     *Judgment affirmed. All the Justices concur.*