## COOPER et al. v. DAVIS, et vice versa.

Nos. 8823, 8839. April 13, 1932.

*Hooper & Hooper,* for plaintiffs.

*I. L. Oakes* and *John I. Kelley,* for defendant.

GILBERT, J. Frost conveyed described land to Mrs. W. H. Cooper "for and during her natural life," with remainder in fee to "her children, if any in life at the time of her death; . . and in the event there is no child or children to take said remainder, then the said property to go to W. H. Cooper for and during his natural life, with remainder to his child or children, if any in life at the time of his death, in fee simple, forever; and in the event

of the failure of the estates herein created for lack of parties to take, . . the said . . real estate to revert" to the grantor. The mineral interests and rights incident to mining were reserved.

Subsequently Frost was adjudicated a bankrupt, and his trustee in bankruptcy sold the reversionary interest in the land, and on April 17, 1916, executed a deed to W. R. Davis. On January 14, 1920, Frost and his only child, by an instrument in writing, "re-leased" and "surrendered" to Mrs. Cooper the reversionary interest. Mr. and Mrs. Cooper instituted against Davis an equitable petition alleging that the provision for retention by Frost of the reversionary interest was inserted in the deed by error; that they had been in possession of the land since the making of the deed; that upon discovery of the provision in the deed they had undertaken to have Frost correct it, and he had given them the release above referred to, which was not accepted, and he did finally on June 3, 1925, execute a deed correcting the error; that Davis was claiming the "conditional reversionary interest" in the land under the deed of the trustee in bankruptcy; that this constituted a cloud on their title; that Davis had advised persons to whom petitioners had negotiated sales of portions of the land, of his claim, and had thus made it impossible for them to dispose of the same; that no present title passed to Davis under the deed of the trustee in bankruptcy, and so long as petitioners were alive with possibility of issue there was not, at the time of the making of the deed by the trustee, any interest which could be seized or administered or sold by the trustee; that no title to said land, either present or future, was conveyed by the trustee to Davis; and that the deed sought to convey only a bare contingency or possibility, without any present right to said property, and was therefore null and void. The prayers were, for decree fixing the fee-simple title (excepting the mineral interests) in petitioners; that the part of the trustee's deed seeking to convey the reversionary or contingent interest be declared null; and for injunction restraining Davis from asserting claim to the reversionary interest mentioned.

The defendant filed a plea of res judicata, based upon litigation between the parties, as reported in 158 *Ga.* 566 (123 S. E. 893). This plea was overruled by the court, to whom the matter was submitted without a jury. The court held that "Frost had such a contingent interest in said land as was assignable, and therefore

subject to sale by his trustee in bankruptcy." The plaintiffs excepted to the ruling last quoted. Davis by cross-bill excepted to the overruling of the plea of res judicata.

Counsel for the plaintiffs properly states the question before the court as follows: "The controlling point in this case is whether or not a conditional [contingent] reversionary interest in land is subject to levy and sale. The trial court decided that it is. If this is correct, the plaintiffs in error have not title, because this interest was sold before they obtained a release from the owner. Of course the right of the bankrupt court to sell an interest depends upon the laws of the State in which the property lies." Plaintiff's counsel further narrows the investigation by the following statement: "Opposing counsel cited several cases upon the trial, in an effort to sustain their contention that the fee remained in Frost because of the retention of this conditional reversionary clause. *Morse* v. *Proper*, 82 *Ga.* 13 (8 S. E. 625); *Collins* v. *Smith*, 105 *Ga.* 525 (31 S. E. 449); *Bradshaw* v. *Estill*, 157 *Ga.* 171 (121 S. E. 385). These cases go no further than holding that a contingent-remainder interest may be sold where contingency is as to the event. This proposition is not denied, but no authority has been cited to show that a conditional reversionary interest is subject to levy and sale. There is quite a difference between interests which may be transferred or relinquished and interests which may be levied upon. The trend of the authorities is that this particular kind of interest can not even be transferred to a third party, and that any. attempt to do so immediately destroys such interest altogether, and it ipso facto passes to the tenant in possession. Authorities are numerous along this line."

Our Code (1910), § 3674, declares: "An estate in remainder is one limited to be enjoyed after another estate is determined, or at a time specified in the future. An estate in reversion is the residue of an estate, usually the fee left in the grantor and his heirs after the determination of a particular estate which he has granted out of it. *The rights of the reversioner are the same with those of a vested remainderman in fee.*" (Our emphasis.) Both remainder and reversion are referred to in the code section just quoted as "an estate." It would seem, therefore, that whatever rule is properly applied as to the salability or leviable interest in the one would apply to the other. "Every legal interest in real

and personal property" can be seized and sold. *Pitts* v. *Hendricks,* 6 *Ga.* 452, 454; *Wilson* v. *Chamberlin-Johnson-DuBose Co.,* 140 *Ga.* 593 (2) (79 S. E. 465); 23 C. J. 335, § 66. Where the reversion is contingent, the rights would also be the same as contingent remainders. In *McGowan* v. *Lufburrow,* 82 *Ga.* 523 (9 S. E. 427, 14 Am. St. R. 178), a petition to a court of equity was filed by the executrix of an estate, for permission to sell a part of the estate for the purpose of paying debts, where there were contingent remainder interests in the estate. This court held, in reviewing the judgment rendered by the trial judge, that "a contingent remainder is an estate." As to the salability under order granted by the court, this court held, in the opinion: "The object of the decree was to pass to the purchaser their remainder interest in the property sought to be sold. It is true that the remainder at that time was a contingent one as to them, and it is further true that some courts and text-writers declare a contingent remainder not an estate, but only a chance to have one; but whatever difference may have heretofore existed between courts and text-writers upon this subject, our code has settled it by declaring that a contingent remainder is an estate. Code [1882], §§ 2263-2265 [1910, §§ 3674-3676]." See also *Isler* v. *Griffin,* 134 *Ga.* 192, 196 (67 S. E. 854). So it will be observed that the sale of the contingent-remainder interest in the *McGowan* case was in pursuance of an order of court. It would seem that a sale by a sheriff pursuant to the levy of an execution would stand upon the same basis. "The sheriff, in conducting a sale under execution, acts as the agent and representative of the defendant in execution, and can sell no greater interest in the property than the defendant in execution could convey." *Dozier* v. *McWhorter,* 113 *Ga.* 584, 587 (39 S. E. 106); *Harber* v. *Nash,* 126 *Ga.* 777, 778 (55 S. E. 928). If a sale is too contingent to be reached by creditors in a proper proceeding, it would seem that it would also be too contingent to permit of sale or assignment.

It is stated in 21 C. J. 1018, § 180: "A possibility of reverter is, at common law, not an estate; it is inalienable, not assignable, not devisable, unless made so by statute; but it is descendible, and may be released to him in possession." Our statute has modified the common-law principle by prescribing the inhibition as against *"a bare contingency or possibility."* The Civil Code (1910), §

4117, with reference to contingencies declares: "A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit." There are cases properly falling under this code section, where it was held that the subject-matter of the sale was a bare contingency. In *Dailey* v. *Springfield*, 144 *Ga.* 395 (87 S. E. 479, Ann. Cas. 1917D, 943), it was held: "Where a vendor for a named consideration conveyed to a vendee 'all the present rights in or title to all interests that' the vendor 'may become possessed of either by inheritance or by deed from' the mother of the vendor, in certain city lots which the mother 'now owns' in a certain city, and any interest he 'may in the future become possessed of in any other city property . . either by deed or inheritance from' the mother, this was an attempt to convey a mere naked possibility without any present interest, and was void." Additional cases cited by counsel for plaintiffs are *Watson* v. *Adams*, 103 *Ga.* 733 (30 S. E. 577); *Hatcher* v. *Smith*, 103 *Ga.* 843 (31 S. E. 447); *Harber* v. *Nash*, (supra); *Smith* v. *Smith*, 130 *Ga.* 532 (61 S. E. 114, 124 Am. St. R. 177); *Cock* v. *Lipsey*, 148 *Ga.* 322 (96 S. E. 628); *Harris* v. *McDonald*, 152 *Ga.* 18, 27 (108 S. E. 448). In some of them the subject was dealt with in very general terms; for instance, in *Watson* v. *Adams*, where a bequest was to Robert, son of the testator, whose whereabouts were not known at the time of the execution of the will, and who was to receive a remainder interest after the death of the life-tenant, provided the son survived the life-tenant. If the life-tenant survived the son, a daughter of the son was to be sole heir to his portion of the estate. More than seven years after the probate of the will, during which time the son Robert had not been heard of, his creditors sued out an attachment and had it levied on his interest in the land, the widow of the testator still being in life. This court held: "The son, Robert I., took under the will only a contingent fee in remainder to his share of the land, which was not subject to levy and sale." It went further and held that the son's daughter owned a vested fee in remainder to his share, and that the absence of the son created a presumption of his death, and any judgment rendered against him upon attachment proceedings was prima facie void. In the opinion the court said: "Hence the levy of the attachment upon Robert I. Watson's interest in the land was void, even if it

had been shown that he was then in life." The facts of that case, under the terms of the will, showed that there was a "bare contingency" of an estate in remainder to the son Robert. That is so for the reason that, as stated in the report of the case, Robert I. Watson, in December, 1881, deserted his family "by going to parts unknown, which desertion has been continuous, his whereabouts unknown and his existence unheard of since." In 1890 his father, John B. Watson, died leaving a will with the provisions above. stated. In January, 1892, creditors sued out an attachment against Robert Watson, and in 1893 the attachment was levied by the sheriff on property mentioned in the will. Laura, the daughter of Robert, and others filed a petition praying that the creditors be enjoined from proceeding with the attachment case, alleging that Robert I. Watson would be legally presumed, on account of his absence for more than seven years, to be dead; that at the time the levy was made he did not own a vested fee-simple title in remainder after the death of Mrs. Annie Watson, but the only interest he ever had under the will of John B. Watson was dependent on a future contingency which never happened, to wit, his survival of Mrs. Annie Watson (his mother) ; therefore the property levied on was not the property of Robert I. Watson and therefore was not subject to levy and sale under the attachment fi. fa. From the state of facts shown, Robert Watson having disappeared in 1881 and never having been heard from at the time of the trial in 1893, it was to be presumed that he was dead; and therefore, under the terms of the will, there was no estate or interest in the property belonging to him, and therefore none subject to levy and sale, the vested remainder in the property, under the terms of the will, having descended to his daughter, Laura. The expression in the opinion to the effect that the same result would follow if Robert Watson had been in life was not necessary to a decision of the case.

In *Hatcher* v. *Smith,* supra, there was a devise to a son for life, the portion or share of the son to be for his support and his family during the term of his natural life, and after his death to be equally divided between any children he might have. It was held that even if any legal estate in the corpus of the property passed to the son, it was at a time when he had a living child or children, with the possibility of becoming the father of other children, too

indefinite and uncertain to become the subject of levy and sale, and this would be so as long as such possibility continued. This case furnishes no authority. *In Harber* v. *Nash,* supra, the court held: "An estate in land, created by will, held by a judgment debtor, which is determinable upon his ceasing for any reason to remain in possession of the land, is too intangible and fleeting in its nature to be the subject-matter of a levy and judicial sale under an execution issued against such debtor." In *Smilh* v. *Smith,* 130 *Ga.* 532 (supra), the court merely construed a deed to convey a life-estate to a named person, with remainder, and held the remainder to be contingent which vested only in such children of the life-tenant as survived her, that children of a deceased child acquired no interest, and that parol evidence of intention in making the deed was properly excluded. Obviously this case furnishes no authority.

In *Cock* v. *Lipsey,* supra, the question arose in this way: Garnett Sneed, under the will of his father, was devised a life-interest in the property, to be enjoyed during his natural life and after his death his wife and children were to receive his share, to be equally divided between them. In case he died without wife or children, his share was to be equally divided between the wife and children of another legatee in fee simple. The will was probated in 1863. In 1866 Garnett Sneed left the country and was never heard from. He had a wife and daughter who also left soon after his departure and were never heard from. In 1866, shortly before his departure, Garnett Sneed conveyed his interest under the will to other persons. The issue arose as to whether Garnett Sneed had such interest as he could convey by deed. These facts are so different from the facts of the present case that the cited case furnishes no authority. Moreover, if any of the cases cited do conflict, they must yield to the decision of *McGowan* v. *Lufburrow,* supra. Properly construed, we do not think they conflict. In *Harris* v. *McDonald,* supra, the question was whether the contingent estate of the minor children could be sold by their guardian under order of the court of ordinary. In the opinion it was said: "It has also been held that a contingent remainder is not the subject of a levy and sale." Cited to sustain that proposition were *Mattox* v. *Deadwyler,* 130 *Ga.* 461 (60 S. E. 1066), and *Harber* v. *Nash,* supra. As shown above, such ruling was not necessary in either case. The language is too general and is not adjusted to the facts. The Civil Code (1910),

§ 3677, draws a distinction between contingent remainders where the contingency is as to the event and not as to the person. That distinction has often been applied by this court, especially in *Morse* v. *Proper,* supra. The contingency of the reversionary interest is as to the event, that is, whether either of the grantees on their death shall leave children. There is no contingency as to the person entitled to the reversion. Frost, the grantor, under his deed, is the only person entitled to that reversionary interest if the contingent event does happen; that is, if the grantees both die leaving no children. If the contingent event does happen, that is, if either of the grantees die and leave children, that will defeat the reversionary interest of Frost, and in such case Davis, the purchaser at the bankruptcy sale and the grantee in the trustee's deed will obtain nothing under that instrument. Having held that Frost's contingent interest was sold by the trustee in bankruptcy, it necessarily follows that his warranty deed and also release executed subsequently to the sale by the trustee in bankruptcy were ineffectual. When this deed was executed Frost had no interest in the land, except the mineral interests reserved in his deed to Mrs. Cooper. We have repeatedly held that a contingent remainderman may sell and assign his contingent estate. Among those cases are *Irby* v. *Smith,* 147 *Ga.* 329 (93 S. E. 877); *Todd* v. *Williford,* 169 *Ga.* 543 (150 S. E. 912).

In *Morse* v. *Proper,* supra, the court had under consideration the legal effect of a deed containing a very similar reverter clause. The deed was made by Morse to his stepmother. It provided that after her death the property should "go to such of her children, by her then husband, as might be living at her death, . . but if she should die without child or children or the representative of either, then to her husband in fee simple." The deed appointed the husband trustee, with power to sell and reinvest for the purposes set forth therein. The only child of the husband and wife was in life when the deed was executed, but died without issue and before his father or mother. After the child's death the husband made a will by which he bequeathed to his wife all his property that he owned, "individually or as trustee for her." He died a few days after making the will, and his widow afterwards died, leaving no child or children or representatives of either, and leaving a will by which she devised her whole estate to her sister. The grantor in

the deed claimed that the property constituted no part of the wife's estate, that his father had no right to transmit the remainder interest to his wife by will or deed, and that the property had reverted to him. This court held "that the husband took a contingent remainder in fee under the deed; and the contingency being as to the event and not as to the person, he had such an interest in the property as he could devise to his wife." In *Johnson* v. *Johnson,* 158 *Ga.* 534 (124 S. E. 18), it was held that where under a will one had a remainder interest in the estate which was contingent as to the event but not as to the person, equity would require an accounting as to such interest and protect the same by injunction. *McCoy* v. *Olive,* 168 *Ga.* 492, 497 (148 S. E. 327).

What is said above leads to the conclusion that the court did not err in holding that Frost had such a contingent interest in the land as was assignable and therefore subject to sale by his trustee in bankruptcy. It is unnecessary to deal with any other question in the case.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*