40896, 40897. NORTON et al. v. GEORGIA RAILROAD
BANK & TRUST; and vice versa.
(322 SE2d 870)

PER CURIAM.

Floyd L. Norton, testator, died October 23, 1980. He was survived by a widow, ten adult children, and twelve grandchildren. Testator's

last will and testament was offered for probate over objections of three of the testator's sons, J. Richard Norton, Spence C. Norton, and Sidney W. Norton, who were specifically excluded under the will. See *Norton v. Ga. R. Bank &c. Co.*, 248 Ga. 847 (285 SE2d 910) (1982).

The Georgia Railroad Bank & Trust Company, appellee, was named executor and trustee under the will. Appellee filed a complaint in the Superior Court of Jefferson County in September of 1982, alleging that ten months after the death of testator, appellants, Richard, Spence, and Sidney, had without permission harvested and sold timber from property belonging to the estate. Appellee sought damages for conversion of the timber. Appellants answered denying any wrongful conversion.

Appellants counterclaimed, jointly, alleging the will of testator violated the rule against perpetuities, and sought a construction of the will that would declare the residual trust invalid and include them as beneficiaries. Richard counterclaimed, individually, alleging that a deed of gift to him executed by his father granted him a fee simple interest rather than a life estate. Spence and Sidney jointly counterclaimed seeking an injunction against enforcement of a note and deed to secure debt in the amount of $24,207.74 that they had executed in favor of testator in September 1979.

The trial court on motion for summary judgment found in favor of the appellee regarding construction of the will, the timber conversion claim, and the deed to Richard. The appellants appeal the above mentioned grants of summary judgment in case number 40896. We affirm.

The court denied appellee's motion for summary judgment with regard to the note and security deed executed by Sidney and Spence. The appellee appeals from the denial of summary judgment in case number 40897. We affirm.

### Case No. 40896

1. Appellants contend as their first enumeration of error that the trial court erred in finding that the will did not violate the rule against perpetuities.

In will construction the court is required to "seek diligently for the intention of the testator and . . . give effect to the same as far as it may be consistent with the rules of law." OCGA § 53-2-91. We may uphold the testator's intent *only as far as it is consistent with the rules of law.* The rule against perpetuities is a positive mandate of law that is to be applied to defeat the illegal intention of the testator. See *Thomas v. C & S Nat. Bank*, 224 Ga. 572, 575 (163 SE2d 823) (1968). Georgia recognizes the common law rule against perpetuities as codified in OCGA § 44-6-1, which states, "Limitations of estates

may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. The law terms a limitation beyond that period a perpetuity and forbids its creation. When an attempt is made to create a perpetuity, the law will give effect to the limitations which are not too remote and will declare the other limitations void, thereby vesting the fee in the last legal taker under the legal limitations."

The purpose of the rule is to prevent property from being tied up for an unreasonable length of time and to prohibit unreasonable restraints upon the alienation of property. *Cook v. Horn*, 214 Ga. 289 (104 SE2d 461) (1958). The only interests that are affected by the rule are contingent future interests that may remain unvested beyond the permissible period of the rule. Vesting is the critical event; a trust may remain in effect beyond the perpetuities period if the interest of the beneficiaries vests within the rule. *Burt v. Commercial Bank &c. Co.*, 244 Ga. 253 (260 SE2d 306) (1979).

The rule against perpetuities has been called a "technicality-ridden legal nightmare" and a "dangerous instrumentality in the hands of most members of the bar." 67 Harv.L.Rev. 1349 (1954). It is for these and other reasons that Professors W. Barton Leach and James K. Logan designed what they called a standard saving clause, see 74 Harv.L.Rev. 1141 (1960), that was intended to be inserted as boilerplate in any will or trust. The function of the saving clause was "to protect against errors in the instrument itself or in any instrument exercising powers of appointment created therein. [Cits.]" 78 Harv. L.Rev. 973, 986 (1968). Two of Georgia's outstanding authorities on the rule against perpetuities have both indicated that saving clauses are effective and should be used. Dr. Verner F. Chaffin in his most recent book, The Rule Against Perpetuities in Georgia, lists in Appendix A, five different forms of standard saving clauses that are designed to protect against drafting errors. Professor William H. Agnor reports that the form books distributed to the bar by the trust departments of half a dozen banks in various parts of the United States have essentially the same basic saving clause forms. He continues, "[s]ince this clause usually appears near the end of the will, it states the last intention of the testator and should prevail." 24 Encyclopedia of Georgia Law 33, 34, § 24, Perpetuities.

Appellants agreed in oral argument that a saving clause should be effective to prevent possible inadvertent drafting errors. They contend, however, that the testator's blatant attempt to violate the rule should prevent the saving clause from protecting the invalid gift. Appellants claim that the testator here, just as the testator in Hagemann v. Nat. Bank &c. Co., 218 Va. 333 (237 SE2d 388) (1977), intended to violate the rule. In the Hagemann case the saving clause itself violated the rule. "[A] savings clause, which recapitulates the error

which it is designed to cure, is to be distinguished from one which directs distribution to the current income beneficiaries of the property, who can be determined at the time of termination of the trust. [Cit.]" 61 AmJur2d 32, Perpetuities, etc., § 27. Hagemann was the only case cited by appellants and the only case we found in which a court refused to allow an explicit saving clause to save an otherwise illegal intention on the part of a testator.[1] We believe that the Hagemann case is not relevant because this testator's saving clause did not violate the rule.

Appellants argue that the testator made a blatant attempt to violate the rule. We cannot agree. The testator had built a family business, and his children looked to him for help and advice. It seems natural that a man with ten children ranging in age from sixty to thirty-seven, and twelve grandchildren ranging in age from thirty-four to five years old would want to provide life estates for those children he so selected, and their children, and grandchildren. Professor William M. McGovern, Jr., in *Perpetuities Pitfalls and How Best to Avoid Them,* 6 Real Prop. Prob. & Tr. J. 155 (1971), wrote that a trust to provide successive life estates for the testator's children, their children, and grandchildren, a "two-generation trust," represents the most common type of rule violation in recent years and "[t]here is relatively little a court can do by way of construction or reformation to save the offending provision." Id. at p. 165. Professor McGovern suggests the use of a saving clause with the living grandchildren as measuring lives. "Such a clause appears to be the most desirable method of carrying out the testator's wishes without running afoul of the rule." Id. at p. 167.

To bolster their claim of an overriding intent on the part of the testator to violate the rule, appellants point to the in terrorem clause in the will. Appellants contend that the testator included the in terrorem clause to prevent his beneficiaries from challenging his blatant attempt to violate the rule with the knowledge that if they tried to challenge his will they might lose their interest under the will. See *Lanier v. Lanier,* 218 Ga. 137, 145 (126 SE2d 776) (1962). We do not see, in this case, how the in terrorem clause could be viewed as an attempt to avoid the rule. If the testator's overriding intention was a

---

[1] The trend seems to be to allow saving clauses to prevent what might otherwise be a violation of the rule. "A provision will not be construed as violating the rule against perpetuities where there is a provision in the will that, if any of its provisions should become susceptible of an interpretation creating an estate of longer duration than permitted under the law, such provision should be revoked as to the period of time beyond that permitted by law. [Cit.]" 70 CJS 626, Perpetuities, § 35; "[i]n a dispositive instrument under which non-vested beneficial interests in property are created, all danger of a violation of the rule against perpetuities may be removed by what is generally referred to as a saving clause." Restatement of Property 2d 1981, § 1.3, p. 36.

violation of the rule against perpetuities, he could have given each child 1/10 of the residual trust so that each would fear losing something of value in the event of a challenge to his allegedly illegal intention. But the testator left four likely challengers. One son who received a $500 bequest had little to lose by a challenge, and the three sons who were excluded, the appellants, had nothing to lose by challenging the will. We find that this in terrorem clause in this will does not show an intention of the testator to violate the rule.

Whether a valid trust has been created depends upon the construction to be given to the language of the will. Reported cases regarding the language used in other wills are not of great benefit in the solution of the question as to the intention of the testator. Fitchie v. Brown, 211 U. S. 321, 333 (29 SC 106, 53 LE 202) (1908). In construction of wills, we are guided by applicable rules of construction that have been established by the laws of Georgia and the decisions of this court. The rules include the following: (1) Every will is sui generis; (2) The first object is to find the testator's intent; (3) The intent is to be derived from a consideration of the will as a whole, read in the light of the circumstances surrounding its execution; and (4) It is to be presumed that the testator intended to dispose of his entire estate and not die intestate as to any part of the estate. *Cumming v. Cumming*, 219 Ga. 655, 659 (135 SE2d 402) (1964).

In viewing the will as a whole we find the following intentions: (1) To provide for two trusts, (a) a marital trust for testator's widow for her life, and (b) a residuary trust for six of the testator's ten children for their lives, with successive life estates for their children, and grandchildren; (2) To exclude three named sons, appellants in this case; (3) To provide an alternative time for final vesting and distribution of the entire estate in the event of a violation of the rule against perpetuities, the saving clause; (4) To provide alternative beneficiaries and final distribution of the entire estate in the event all the beneficiaries predeceased the testator; and (5) To provide that no beneficiary under the will challenge the terms of the will.

The testator created the following three alternative testamentary schemes. First, he provided for successive life estates in his children, their children, and their grandchildren; second, he provided in the saving clause a time for final distribution and vesting of the property in the event of a possible violation of the rule against perpetuities under the first scheme; and third, he provided for alternate beneficiaries in the event all of the named beneficiaries predeceased him. "If a will is legal in part and illegal in part, that part which is legal may be sustained unless the whole will so constitutes one testamentary scheme that the legal portion alone cannot give effect to the testator's intention . . ." OCGA § 53-2-4.

The first scheme violates the rule against perpetuities when

viewed in isolation, in that the contingent future interests created in the grandchildren of testator's children are not certain to vest within the rule. The interests of the six named children vested upon the death of the testator and the contingent future interests created in the children's children will vest, if at all, upon the death of their parents, the measuring lives, therefore, there is no violation with regard to the children or the children's children. See *Rogers v. Rooth*, 237 Ga. 713, 715 (229 SE2d 445) (1976).

The second scheme, the saving clause, modifies the first scheme by setting a time limit that is within the rule for final vesting and distribution. It names the beneficiaries, those then entitled to income. It also provides for measuring lives, the beneficiaries of the will who were in life at the testator's death. This is a valid scheme that does not violate the rule against perpetuities. The legal intention may be sustained because it can give effect to the testator's intention.

We find it difficult in this case to find an overriding intention on the part of the testator to violate the rule against perpetuities when according to his own clear and unambiguous words he expressed a desire not to violate the rule. He set forth a valid alternative method for final vesting and distribution within the rule in the form of a saving clause, and he stated in the clause that, "[t]he purpose of this provision is to prevent any possible violation of the rule against perpetuities and this provision shall be so construed."

In viewing this will we have been guided by the rule against perpetuities, a positive rule of law, OCGA § 44-6-1, which seeks to pry open a testator's excessive dead-hand control and give control to the living in order to maintain the alienability of property. We have also been guided by rules of construction that require us to seek and follow the intentions of the testator regarding the manner in which he desires his property to be distributed after his death. OCGA § 53-2-91. When the two conflict, the rule against perpetuities will defeat the illegal intentions of the testator and vest the fee in the last legal taker. When they do not conflict, as in this case, the dispositive scheme of the testator may be upheld. Both should have the same final result, testamentary schemes that do not allow tying up of property beyond the permissible period of the rule, either by operation of the rule against perpetuities or by the law of the testator's last will and testament.

The trial court correctly applied the saving clause and ruled that the trust was to terminate 21 years after the death of the last surviving beneficiary who was in life at the testator's death. We find no error in the trial court's construction of the last will and testament of Floyd L. Norton, nor in granting summary judgment to the appellees.

2. Appellants contend as their second enumeration of error that the trial court erred in granting summary judgment in favor of appel-

lee with respect to the timber conversion claim.

Having found the trust valid, appellants' argument that the proceeds of the timber sale should vest pro tanto in the heirs at law is moot. They alternatively contend that the testator had given them rights to the timber during his lifetime and that it was a question to be resolved by a jury and not by summary judgment.

Trees growing upon land are a part of the realty, and a transfer of them must be in writing in order to comply with the statute of frauds. OCGA § 12-5-3; *Corbin v. Durden*, 126 Ga. 429, 430 (55 SE 30) (1906). As there was no writing involved, the appellants contend that they have a perfect equity under the decision of *Aultman v. Gibson*, 172 Ga. 877 (159 SE 285) (1931), in which this court found that a donee held property "under a parol gift based upon a meritorious consideration; and that she, with the consent of the donor, entered into possession and made valuable improvements upon the faith of the gift. She thereby acquired a perfect equity as against the donor, his heirs, and those claiming under him." Supra at p. 878. For appellants to prevail they must show that they took possession under the gift and that they made valuable improvements thereon upon the faith of the donor's promise, or declared intention to make the gift. The appellants could not remember exactly when the gift was made, but they agreed that they were to get the timber and pulpwood in return for clearing some land and putting in irrigation pipes. The clearing of the land and the laying of pipe were never completed. Appellants did not show that they entered into possession or that they made any valuable improvements. See *Holland v. Atkinson & Peteet*, 112 Ga. 346, 347 (37 SE 380) (1900). The granting of summary judgment was, therefore, not in error.

3. Appellant J. Richard Norton contends that the trial court erred in holding that a deed to him from the testator was only a life estate.

The deed clearly stated that appellant was to have an interest in the property "for and during his natural life, and upon [his] death . . . to the children born . . . of any marriage contract entered into between J. Richard Norton and any wife or wives he may legally marry . . . in fee simple, the following described property . . . In the event the said J. Richard Norton should leave no children or grandchildren surviving him the property herein conveyed shall revert to the grantor herein." The wording of the deed is clear and unambiguous. "[A] gift by deed or devise of a parent to a child of a lot of land during the life of such child, remainder to the child or children of such child, carves out a life estate for the child of donor or devisor." *Dickinson v. Jones*, 36 Ga. 97, 103 (1867). The testator, grantor, kept a contingent reversionary interest in the property. The interest was contingent upon the event of Richard dying without children or grandchildren surviving

him. See *Cooper v. Davis*, 174 Ga. 670, 677 (163 SE 736) (1932).

The trial court did not err in granting summary judgment.

## Case No. 40897

In this case the cross-appellant is Georgia Railroad Bank and Trust Company, executor, and the cross-appellees are Spence C. Norton and Sidney W. Norton. Cross-appellant originally filed a complaint that began the case that was discussed above. Cross-appellees counterclaimed alleging that a note and deed to secure debt they executed in favor of their father, Floyd L. Norton, should not be enforced. The cross-appellant filed a motion for summary judgment in its favor with regard to the complaint and counterclaim. The motion on the counterclaim was denied by the trial court and thus this appeal.

The testator conveyed to the cross-appellees a tract of land in 1977 as a gift. Approximately two years later, the cross-appellees wanted to borrow money to make some improvements. They discussed a loan with a bank and later talked with their father about the loan. When Mr. Norton was told by his sons that the bank wanted to tie up the business as collateral for the loan he decided to provide the money. Mr. Norton had a note and security deed executed. The security for the note was the land that Mr. Norton had given his sons in 1977. The sons contend that their father never intended to enforce the note and that his main concern was protecting the family business from third parties and alternatively that the note was forgiven.

"A summary judgment should not be rendered unless there is no genuine issue as to any material fact and unless the moving party is entitled to a judgment as a matter of law. [OCGA § 9-11-56]. The burden is upon the movant to affirmatively show that there is no genuine issue and that he is entitled to a summary judgment. The party opposing the motion for a summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. The evidence must be construed most favorably to the opposing party, and the trial court must give him the benefit of all favorable inferences that may be drawn from the evidence. [Cits.]" *Smith v. Sandersville Production Credit Assn.*, 229 Ga. 65, 66 (189 SE2d 432) (1972). Construing the evidence most favorably to the cross-appellees we find that there are questions of material fact remaining and it was not error for the trial court to refuse to grant summary judgment to the cross-appellants. Therefore, we affirm case no. 40897.

*Judgment affirmed in Case No. 40896. Hill, C. J., Marshall, P. J., Clarke, Gregory, Weltner, JJ., and Judge George A. Horkan, Jr., concur. Smith, J., dissents. Bell, J., disqualified.*

*Judgment affirmed in Case No. 40897. Clarke, Smith, Gregory, Weltner, JJ., and Judge George A. Horkan, Jr., concur. Hill, C. J., and Marshall, P. J., dissent. Bell, J., disqualified.*

DECIDED NOVEMBER 20, 1984 —
REHEARING DENIED DECEMBER 12, 1984.

*Groover & Childs, Denmark Groover, Jr.,* for appellants.

*Knox & Zacks, Wyckliffe A. Knox, Jr., Patricia Warren Booker, Lewis & Lewis, Preston B. Lewis, Jr., Knox & Evans, Warren D. Evans,* for appellee.

SMITH, Justice, dissenting.

I respectfully dissent to Division One of the opinion. I do not believe that a testator should be allowed to violate the rule against perpetuities and then prevent the operation of OCGA § 44-6-1 (a) by slipping in a saving clause. I believe that this testator fully intended to violate the rule and that his inclusion of the in terrorem clause indicates his intention. This testator would have had the property tied up long beyond the permissible period if the appellants in this case, who had all to gain and nothing to lose, had not challenged the will. The remote interests should have been declared void and the limitations which were not too remote should have vested in the last legal takers as mandated by OCGA § 44-6-1 (a). At the least, a jury question is involved as to intent based upon the testator's actions. I think a saving clause in a will to nullify the rule against perpetuities is best described thusly: It's better than Grace — you don't even have to repent.